CHARLES C. YEGGY, APPELLEE, V. FIDELITY RESERVE
COMPANY, APPELLANT.

FILED JULY 16, 1929. No. 26679.

*Hoagland & Carr* and *C. S. Beck*, for appellant.

*Allen & Requartte* and *George N. Gibbs*, contra.

Heard before ROSE, DEAN, GOOD, EBERLY, THOMPSON and
DAY, JJ., and RAPER and REDICK, District Judges.

REDICK, District Judge.

This is an action brought by Charles C. Yeggy against
the Fidelity Reserve Company to recover $729.90 and in-
terest which plaintiff claims to have paid to the defendant

as the first premium on a life insurance policy which defendant refused to issue. The circumstances under which the claim arises are as follows: On July 27, 1920, the plaintiff made application for a life insurance policy with the defendent in the sum of $30,000, and passed the medical examination, and delivered to the agent of the insurance company his note of the above date for the sum stated, said note being due in six months thereafter, payable to the First National Bank of Chappell, the agent of the defendant being also an officer of the bank, having authority to write insurance for the defendant. The custom was in such cases for the bank to accept the note as cash and credit 40 per cent. thereof to the deposit account of the insurance company and 60 per cent. to an agent's insurance account. The note was then covered into the assets of the bank to be collected in due course. At the end of each year the amount in the insurance account was divided up among the agent of the insurance company and certain employees of the bank according to a certain ratio. The matter was so handled in the present instance except that, owing to the failure of the bank, there was no division of the insurance account among the employees. This account was not considered an asset of the bank, but was set up as a matter of bookkeeping. If the policy was not issued, the note would be returned to the insured and the credits to the insurance company and insurance account charged back. Shortly after this transaction, Yeggy went upon an extended trip to the Hawaiian Islands supposing his insurance policy would be issued in due course. As a matter of fact the application was never accepted by the company because of the disapproval at the home office of the result of the medical examination. Matters remained in this situation until about January 10, 1921, when the bank became insolvent and a receiver was appointed to wind it up. At this time the bank held two notes of Yeggy, the one just described, for $729.90, and one for $6,000. This latter note had been pledged to a Kansas City bank as collateral to a loan to the Chappell bank, but was after-

wards taken up by the receiver. At the time of the failure of the bank, Yeggy had on deposit the sum of $753.42, and the receiver offset this amount against the note for $729.90, leaving a deficiency of $9.40 which was afterwards paid for or on account of plaintiff. Upon this transaction is based the claim of plaintiff that he has paid the premium note.

Upon Yeggy's return from his trip and about February 19, 1921, he first learned that the policy had not been issued, and wrote the insurance company to that effect, and that his note had been presented by the bank for collection. Some considerable correspondence resulted, but no adjustment was made. A trial of the action was had and upon the close of plaintiff's testimony a verdict was directed by the court for the defendant and judgment rendered thereon. That judgment was reversed by this court and the case sent back for further proceedings, and on March 1, 1924, an amended petition was filed and issue joined.

Shortly thereafter, the receivership proceedings being still pending, the defendant took the matter up with the receiver and convinced him that he had no right to offset the plaintiff's deposit against the premium note, and thereupon the receiver canceled such offset, restored the deposit to the credit of Yeggy and applied the same upon the $6,000 note above mentioned. When the first offset was made the note was returned to Yeggy and he has never paid anything thereon except as may have resulted from the application of the deposit by the receiver, plus $9.40. The cause was again tried to a jury and resulted in a verdict for the plaintiff for the sum of $1,111.29, upon which judgment was rendered; motion for a new trial was overruled, and defendant appeals.

The claim of the plaintiff is that, by reason of the transaction above detailed, he has been compelled to pay the note for which he received no consideration, and that the defendant is liable for the loss thereby occasioned; that it was so held on the former appeal, which has become the law of the case. On the other hand, it is the claim of the

defendant that the receiver had no authority to offset the plaintiff's deposit against the premium note, on the ground that the bank had no title thereto, and could acquire none, unless or until the insurance policy was issued for the payment of the premium on which the note was given; that the most it had received was 40 per cent. of the face of the note, and that by way of credit in its deposit account with the bank; and further, inasmuch as the deposit of. plaintiff when offset was worth only about 30 per cent. of its face value, or as stipulated, $216.27, that plaintiff's damages, if any, cannot exceed that amount with interest.

The first question for determination is whether the decision of this court upon the first appeal has become the law of the case. The record of the first trial is not before us, but it appears from the opinion of Commissioner Sandall filed therein that all the facts above detailed were in evidence upon that trial, and upon the question whether the holding upon the former appeal has become the law of the case we are permitted to consult that opinion for the purpose of determining what matters were considered, upon what grounds the judgment was entered, and what was settled for the future disposition of the case. *Thompson v. Maxwell Land Grant & R. Co.*, 168 U. S. 451; *Walker v. Freeman*, 94 Ill. App. 357.

Upon examining that opinion we find the holding of this court to have been that, upon evidence of the facts above detailed, the plaintiff was entitled to recover, and that the trial court erred in directing a verdict for the defendant. To reach that conclusion it must have been and was held that the offset of plaintiff's deposit against the premium note amounted to a payment thereof by the plaintiff; and this necessarily included a holding that the bank was the owner of the note, that it was part of the bank's assets in the hands of the receiver, and that the receiver had a lawful right to make the offset. We think that further discussion upon these points is precluded by our former decision, and that to that extent it has become the law of the case.

It does not follow, however, that the plaintiff is entitled

to recover the full amount claimed in his petition, if any new evidence bearing upon that question is brought into the case upon the second trial. On the former hearing the case was remanded generally. On the second trial the defendant offered evidence to the effect, and it was finally conceded upon the record, that, at the time of the offset by the receiver of plaintiff's deposit of $753.42, the same was actually worth only 30 per cent. of its face, or the sum of $216.27; in other words, if the plaintiff had sought to withdraw his deposit at that time, all he could have received was such 30 per cent. Inasmuch as the plaintiff had paid nothing upon the note except the sum of $9.40, and that the total value of his property taken and applied thereon did not exceed the sum of $216.27, and in view of the further facts that he has received his note back and his deposit for the full amount reinstated, whether the sum was offset against the $6,000 note or not, it is difficult to perceive how the plaintiff has been damaged or suffered loss in excess of $225.67. Upon the first trial it did not appear but that plaintiff's deposit was worth 100 per cent. and, therefore, the offset and cash were correctly held to amount in effect to full payment of the note. Upon the second trial, however, the new evidence showed the deposit to be worth only $216.27. The plaintiff should not be permitted to recover any sum in excess of his actual loss. In the present case plaintiff, in addition to the sum recovered herein, may be in a position to recover 30 per cent. of his deposit or obtain credit for the full amount thereof on his $6,000 note; but this result cannot be anticipated at this time, and the defendant is not in position to raise the point in view of the fact that it received credit in its deposit account for 40 per cent. of the note. The plaintiff is not entitled to recover this 40 per cent. because he has not paid it. The total amount paid by him is $225.67. Although plaintiff may secure a profit in the end, defendant has suffered no legal injury, as it is compelled to pay less than the amount credited in its deposit account from the proceeds of the note.

A number of other matters are discussed in the brief of

appellant and we have examined them but find no error therein prejudicial to the defendant.

We conclude that the judgment of the district court is excessive, that the plaintiff is entitled to recover the sum of $225.67, with interest at 7 per cent. per annum from January 10, 1921; and inasmuch as, under the facts shown, another trial would be of no benefit to either party, it is ordered that the judgment of the district court be reversed and the cause remanded, with instructions to enter judgment for the plaintiff in the sum of $359.67 and costs.

REVERSED.